IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,
*ex rel.* LOKESH VUYYURU, M.D.,

    Plaintiff,

v.                                              Civil Action No. 3:06cv180

GOPINATH JADHAV, M.D.;
SOUTHSIDE GASTROENTEROLOGY
ASSOCIATES, LTD.,;
PETERSBURG HOSPITAL COMPANY,
LLC; and COLUMBIA/HCA
JOHN RANDOLPH, INC.,

    Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on the Motions to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) filed by Defendant Gopinath Jadhav, M.D., Defendant Southside Gastroenterology Associates, Ltd., Defendant Petersburg Hospital Company, LLC, and Defendant Columbia/HCA John Randolph, Inc. (hereinafter "defendants"). For the reasons set forth below, the motions are granted.

**I.**

On March 13, 2006, Lokesh Vuyyuru, M.D. (hereinafter "plaintiff"), filed an *ex relatione* action on behalf of the United States pursuant to 31 U.S.C. § 3730(b)(1) and 31 U.S.C. § 3732(a). On June 27, 2006, the United States notified the Court of its decision not to intervene. Five months after the original filing, on August 29, 2006, the current shape of this case took form in the

Third Amended Complaint ("TAC") filed by Plaintiff.  The TAC asserts claims under the Federal False Claims Act, 31 U.S.C. § 3729, *et. seq.*, and conspiracy claims under Virginia law.

Plaintiff alleges that Gopinath Jadhav, M.D. (hereinafter "Dr Jadhav") engaged in fraudulent activity in his practice as a gastroenterologist by routinely taking unnecessary biopsies of the ileocecal valve during colonoscopies, and then charging Medicaid, Medicare, and private insurance companies for them "for the sole purpose of enhancing his income" and the income of the two hospitals for which he worked: Southside Regional Medical Center (hereinafter "SRMC") and John Randolph Medical Center (hereinafter "JRMC") (Third Am. Compl. 5).[1]  The TAC also alleges that Dr. Jadhav and the two medical centers conspired to submit these fraudulent charges.

All four defendants have moved for dismissal pursuant to Fed. R. C. P. 12(b)(1) and 12(b)(6).  They contend that dismissal is proper because: (1) the TAC fails to establish subject matter jurisdiction under 31 U.S.C. § 3730(e)(4) of the False Claims Act ("FCA"); (2) the statute of limitation bars both the FCA and state law conspiracy claims; (3) the TAC fails to plead the FCA claims with specificity; (4) the TAC fails to state a claim for conspiracy

---

[1] Plaintiff also contends that Dr. Jadhav "frequently billed for the procedure of a colonoscopy and upper-endoscopy when Dr. Jadhav failed to complete the procedure." (Third Am. Compl. 7).

under Virginia law; (5) the defendants' statutory immunity from damages bars the state law conspiracy counts; and (6) the Cameron Foundation does not have successor liability for the state-law conspiracy counts.  For the reasons set forth below, there is a lack of subject matter jurisdiction and it is, therefore, unnecessary to consider the other grounds upon which dismissal is sought.

**II.**

"Federal courts are courts of limited jurisdiction and the 'threshold requirement in every federal case is jurisdiction.'" Barclay Square Properties v. Midwest Federal Savings and Loan Association, 893 F.2d 968, 969 (8th Cir. 1990) (quoting Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987)).  Title 28 U.S.C. § 1330 *et seq.* sets forth the various predicates for jurisdiction.

The plaintiff bears the burden of establishing that subject matter jurisdiction exists.  See, e.g., Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999) ("In this appeal, Jones challenges the district court's determination that it lacked subject matter jurisdiction over his ADA claims against the Defendants.  Jones has the burden of proving the existence of subject matter jurisdiction"); Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999) ("The plaintiff has the burden of proving that subject matter jurisdiction exists"); Richmond, Fredericksburg & Potomac R. Co. v. U.S., 945 F.2d 765, 768 (4th Cir. 1991) ("When

a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff"). Here, plaintiff has failed to meet this burden.

**A.**

Plaintiff alleges in the TAC that the Court has federal question jurisdiction under 31 U.S.C. § 1331 because plaintiff makes his primary claims under the FCA, a federal statute. That statute, however, forecloses the exercise of jurisdiction:

> over an action . . . based upon the public disclosure of allegations or transactions . . . from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4); Rockwell Int'l Corp. v. United States, ___ U.S. ___, 2007 WL 895257, *4 (Mar. 27, 2007). Courts interpreting this portion of the statute have concluded that courts must dismiss complaints brought under the FCA where a complaint is: "(1) 'based upon' information (2) that was 'publicly disclosed' and (3) [the plaintiff] was not the 'original source' of the information." Grayson v. Advanced Mgmt. Tech. Inc., 221 F.3d 580, 582 (4th Cir. 2000); see also U.S. *ex rel.* Siller v. Becton Dickinson & Co., 21 F.3d 1339 (4th Cir. 1994)(laying out the same three requirements for proper dismissal). All three requirements for dismissal are met in this case.

1.

In U.S. *ex. rel.* Siller v. Becton Dickinson & Co., the Fourth Circuit concluded that "a relator's action is 'based upon' a public disclosure of allegations only where the relator has actually derived from that disclosure the allegations upon which his *qui tam* action is based." Siller, 21 F.3d at 1348.  "Such an understanding of the term . . ." the court continued, "is fully consistent with section 3730(e)(4)'s indisputed objective of preventing 'parasitic' actions." Id.  Indeed, if relators were permitted to bring cases based upon facts or allegations derived from publicly available information, they would not be "sounding the alarm, but echoing it," which would do "nothing to further the government's efforts to ferret out fraud." U.S. *ex. rel.* Detrick v. Young, 909 F. Supp. 1010, 1020-21 (E.D. Va. 1995). Reviewing the information that was publicly available at the time a relator filed his claim, and assessing the similarity between that information and the relator's allegations, therefore, are critical steps in determining whether a court has jurisdiction over the relator's claim.

In this case, there is substantial evidence that plaintiff's allegations are derived from public disclosures.  Almost a year before plaintiff filed his complaint, the Virginia Times published a front page article entitled "Alleged insurance, quality-of-care fraud at SRMC." Dorothy Rowley, Alleged Insurance Quality-of-Care Fraud at SRMC, VA. TIMES, March 30, 2005, at A-1.  The article

discussed allegations about defendant Dr. Gopinath Jadhav's ethics and medical practice.  In the ninth paragraph, for instance, the article noted:

> Nursing sources who worked with Jadhav, said . . . that Jadhav often performed medical procedures too quickly – usually without doing a thorough examination first, colonoscopies in less than five minutes and biopsies of the ileocecal valve.  This kind of thing, according to the source, resulted in the doctor allegedly engaged in billing to increase his billing revenue – including Medicaid and Medicare for unnecessary procedures.

Id.  The allegations discussed in this paragraph are substantially similar to those found in paragraphs 17-27 of plaintiff's Third Amended Complaint (filed over a year later on August 30, 2006).[2] In paragraph 27 of that complaint, for instance, plaintiff alleges:

> Additionally, Dr. Jadhav frequently billed for the procedure of a colonoscopy and upper-endoscopy when Dr. Jadhav failed to complete the procedure.  The time expended by Dr. Jadhav for a colonoscopy were at times less than five minutes and for a upper-endoscopy less than three minutes [sic] . . . .

Paragraph 20 alleges:

---

[2] Plaintiff's first complaint was also filed well after the Virginia Times articles discussed above.  It was filed on March 13, 2006.

6

> Dr. Jadhav conspired with SRMC and JRMC to perform the unnecessary medical procedures with the purpose of charging Medicaid and Medicare as well as private insurance companies for the unnecessary medical procedure for the sole purpose of enhancing his income and that of SRMC and JRMC.

The remarkable similarities between the news article and the allegations contained in these paragraphs are significant proof that the latter are "actually derived" from the former.

With even greater similarity to plaintiff's later filed complaint, a March 30, 2005 editorial in the Virginia Times contained the following information:

> There have been multiple complaints brought against Dr. Gopinath Jadhav. We asked for an investigation through the attorney general's office, the governor's office and the state board of medicine. These are three main points concerning Dr. Jadhav [sic]:
>
> • He did colonoscopies in less than five minute, when they normally take 15 minutes.
> • He biopsies ileocecal walls as lipomas; and
> • The hospital knows this, and despite having brought it to their attention, they suppressed the person who brought the information to the attention of the administration. Same story with the hospital's nursing staff.

Editorial, From the Publisher, VA. TIMES, March 30, 2005, at A-8. Here too, the allegations in this editorial closely resemble those made by plaintiff in the complaint he filed almost a year later.

7

The Virginia Times also published at least five additional articles before March 13, 2006, the date on which plaintiff filed this action, about problems related to Dr. Jadhav, the JRMC, and the SRMC.  See, e.g., Dorothy Rowley, SRMC 'Guilty' According to CMS Decision, VA. TIMES, April 6, 2005, at A-1, A-8; Editorial, Talk About Conducting An Investigation, VA. TIMES, April 13, 2005, at A-6; Sylvina Poole, Physicians' Alleged Misdoings Often Leave Committees With Tied Hands, VA. TIMES, April 20, 2005, at A-1, A-5; Dorothy Rowley & Michael Forbes, JRMC Upset Over Articles, Another Patient Accuses Jadhav, VA. TIMES, April 27, 2005, at A-1, A-8; Dorothy Rowley, Hospitals Indulging in Fraud; Why?, VA. TIMES, March 4, 2005, http://www.virginiatimes.org/article_46.shtml/.  All of these articles constitute "public disclosures" under the FCA, which states that information "from the news media" may be considered "publicly disclosed." 31 U.S.C. § 3730(e)(4)(A).

The close similarities between these several news articles and the allegations contained in plaintiff's later filed complaint constitute convincing evidence that the allegations in his *qui tam* action are "actually derived" from those articles, particularly because plaintiff's pleadings do not offer any explanation about how or when he became aware of the alleged fraudulent activity at issue in this case.  While plaintiff, in his opposition brief, denies that his allegations are based upon the Virginia Times articles, he does not offer any evidence, other than a post hoc

8

conclusory affidavit stating that he complained about defendant Dr. Jadhav to the FBI prior to the Virginia Times articles, that would allow the Court to adopt his position. He does not provide the dates of any these alleged meetings, the names of the FBI agents with whom he met, or any information about the content or results of these meetings. Even at the oral argument held on January 26, 2007, plaintiff's counsel could not provide any details about these meetings.

Thus, faced with over ten news articles published almost a year before this action, the significant similarity between those articles and the TAC, and a dearth of evidence from the plaintiff documenting the source of the allegations in the TAC, the Court concludes that the allegations of the TAC were "actually derived from" these public disclosures. Siller, 21 F.3d at 1348.

### 2.

Considering the strong evidence that the allegations in this case appear to be derived from a prior public disclosure, under the jurisdictional requirements of the FCA, the plaintiff must demonstrate that he is an "original source" of the allegations. 31 U.S.C. § 3730(e)(4). Otherwise, the Court must dismiss the action for lack of subject matter jurisdiction. Rockwell, 2007 WL 895257; Siller, 21 F.3d at 1348; Grayson, 221 F.3d at 582-83. Again, this is to ensure that plaintiff's case is not the type of parasitic

9

lawsuit that Congress designed §3730(e)(4) to prevent. Siller, 21 F.3d at 1348.

To have "original source" status, a relator must demonstrate that he: (1) had "direct and independent knowledge of the information on which the allegations are based," and (2) "voluntarily provided the information to the Government before filing an action"under the FCA. 31 U.S.C. § 3730(e)(4)(B); United States *ex rel*. Hafter v. Spectrum Emergency Care, Inc., 190 F.3d 1156, 1162-63 (10th Cir. 1999). In order to do so, he must:

> [A]llege specific facts – as opposed to mere conclusions – showing exactly how and when he or she obtained direct and independent knowledge of the fraudulent acts alleged in the complaint and support those allegations with competent proof. Only in this way will the district court be able to adequately identify legitimate *qui tam* actions and weed out parasitic plaintiffs who offer only secondhand information, speculation, background information or collateral research.

Id. Further, as the Eighth Circuit noted in United States *ex. rel.* Hays v. Hoffman, the plaintiff bears the burden of proving that he is the "original source" for *each* alleged fraudulent claim. United States *ex. rel.* Hays v. Hoffman, 325 F.3d 982-990 (8th Cir. 2003). Here, the plaintiff has not established that he is entitled to "original source" status.

**a.**

First, plaintiff consistently has failed to provide specific facts about how he obtained knowledge of the fraudulent acts alleged in the TAC. Instead, in that complaint, he merely states that he was, over a span of several years, a member of the Committee for Gastroenterology, a member of the Department of Medicine, a member of the Endoscopy Committee, and a member of the investigating committee member for peer review . . . for the medical charts of Dr. Jadhav" at Southside Regional Medical Center, and also a director and assistant director of Gastroenterology at John Randolph Medical Center. (Third Am. Compl. 4). While these positions might indicate how it may have been *possible* for him to obtain the information contained in his allegations, they do not show "*exactly how and when* he . . . obtained direct and independent knowledge of the fraudulent acts alleged" in his complaint. Id. (emphasis added). Without such specific facts, and in light of the earlier public disclosures, this Court simply cannot make a finding that the plaintiff was an original source of the allegations in this case.

**b.**

Second, plaintiff does not provide specific facts about the *allegations* in the TAC, such that the Court could determine that he was the original source of them. For instance, one of the

central allegations is that the defendants were involved in Medicaid, Medicare, and other forms of billing fraud. Plaintiff does not, however, provide a single specific instance of such billing fraud. Instead, in lieu of offering specifics, he merely asserts that (1) it occurred, and (2) was "improper and fraudulent." His attorney admitted this during oral argument at the January 26, 2007 hearing:

> The Court: ... Where is there a specific bill or set of bills, or a series of bills, that by identity, by quantity, by date, that it is alleged to be fraudulent? It is not there, is it?
> Mr. Roberts: No, sir, he does not allege in that fashion.

Transcript of January 27, 2007 Oral Argument at 37-38.

Similarly, the plaintiff has not provided any correlation between the fraudulent billing that he alleges occurred at JRMC and SRMC and the fraudulent practices that he alleges defendant Dr. Jadhav engaged in. At the January 26, 2007 hearing, for instance, the following exchange took place between the Court and plaintiff's attorney:

> The Court: Did he correlate . . . the billing with the doing of this . . . Yes or no? Did he correlate them?
> Mr. Roberts: I don't know that I can answer that question, Your Honor.

Transcript of January 27, 2007 Oral Argument at 53.

In light of the generalities and conclusory statements that permeate the TAC and the plaintiff's briefs on the jurisdictional issue, the Court cannot making a finding that plaintiff had "direct" knowledge of the allegations in the TAC apart from what appeared in the public domain well before the TAC was filed. See, e.g., United States *ex. rel.* Reagan v. East Ex. Med. Ctr. Reg'l Healthcare Sys., 384 F.3d 168, 179 (5th Cir. 2004) (concluding that the plaintiff was not an original source because she "took disclosures that had already been investigated and reported . . . and, based on her own experience, claimed that they were fraudulent"); Hafter, 190 F.3d at 1163 (denying plaintiff original source status because of a lack "specific, particularized fact allegations showing which fraudulent activities" the plaintiff had witnessed, "how he witnessed them and when").

### c.

Third, even though the plaintiff asserts in the TAC, that he "lea[r]ned that certain fraudulent practices were occurring at John Randolph Medical Center and at Southside Regional Medical Center, and objected to those practices and also notified government authorities," he failed to provide the necessary dates and details that might permit the Court to accept his claim. Indeed, the statement is a conclusory one. It does not demonstrate *how* plaintiff learned about such practices, and information of that specificity is imperative to making a finding that plaintiff is an

original source.  Id.

Plaintiff, therefore, cannot prove that he was an original source of the allegations in the TAC.  He has had ample opportunity to supply the Court with the "specific facts – as opposed to mere conclusions – showing how and when he . . . obtained direct and independent knowledge of the fraudulent acts" that he alleges in his complaint, and to "support those allegations with competent proof."  Hafter, 190 F.3d at 1162-63.  He has, however, utterly failed to do so.  He did not provide specific facts in his first complaint.  He did not provide specific facts in his amended complaint.  He did not provide specific facts in either his second, or third amended complaints.  Moreover, when given the opportunity to provide specific facts, and then called upon to do so by the Court at the January 27, 2007 hearing, plaintiff could provide one.[3]  On this record, it must be concluded that the plaintiff is

---

[3] Additionally, prior to the January 27, 2007 hearing on the defendants' Motions to Pursuant to Rules 12(b)(1) and 12(b)(6), the plaintiff did not request a period of discovery in order to respond to that motion, or an evidentiary hearing to prove jurisdiction. Transcript of January 27, 2007 Oral Argument at 67-69.  Only at the end of that hearing, after failing to provide any specific facts in response to the Court's request to do so at the hearing, did plaintiff request more time to provide them.  Plaintiff, however, had over ten months to provide such facts.  He filed four different iterations of a complaint.  He also was on notice for over three months that defendants were challenging subject matter jurisdiction in this case.  Indeed, defendants' Motions to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) were filed on October 6, 2007, and a hearing on this motion was not held until January 26, 2007. Plaintiff, therefore, had ample opportunity to gather the type of evidence required to demonstrate to the Court that subject matter jurisdiction exists in this case.  He did not gather any. He is

14

not an original source of the allegations in the TAC.

### 3.

Overall, therefore, plaintiff fails to meet the jurisdictional requirements of 31 U.S.C. § 3730(e)(4). The defendants have produced sufficient evidence for the Court to make a finding that the plaintiff's allegations are based on the Virginia Times articles published before the plaintiff's complaint. Further, plaintiff has not demonstrated the specific facts required for the Court to grant him "original source" status. Hence, the Court lacks subject matter jurisdiction under the FCA and thus lacks federal question subject matter jurisdiction over this case. 31 U.S.C. § 3730(e)(4).

### B.

Additionally, the Court does not have diversity jurisdiction under 28 U.S.C. § 1332. There is not complete diversity between plaintiff and the various defendants because both plaintiff and, for instance, defendant Dr. Jadhav, are Virginia residents. In <u>Wisconsin Department of Corrections v. Schact</u>, 524 U.S. 381, 388 (1998), the Court held that "[a] case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, i.e., only if there is no plaintiff and no defendant who are citizens of the

---

not, therefore, entitled to more time to do so.

same State." Further, "[t]he presence of the nondiverse party automatically destroys original jurisdiction: No party need assert the defect. No party can waive the defect, or consent to jurisdiction. No court can ignore the defect; rather, a court, noticing the defect, must raise the matter on its own." Id. at 389 (citations omitted).

**CONCLUSION**

For the foregoing reasons, the defendants' motions to dismiss will be granted, and the action will be dismissed for lack of subject matter jurisdiction.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

/s/
Robert E. Payne
United States District Court

Richmond, Virginia
Date: March 28, 2007